```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF ALABAMA
                    SOUTHERN DIVISION
```

SE PROPERTY HOLDINGS, LLC,
    :
    Plaintiff,
    :
vs.                         CIVIL ACTION 12-0303-KD-M
    :
SANDY CREEK, II, LLC, et al.,
    :
    Defendants.

### REPORT AND RECOMMENDATION

The Motion to Dismiss Paul Peed and Raymond Peed's Counterclaim (Docs. 39, 40) filed by Plaintiff/Counterclaim Defendant SE Property Holdings, LLC ("SEPH") has been referred for report and recommendation under 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2.  Diversity jurisdiction has been invoked in this Court under 28 U.S.C. § 1332 (Doc. 1, p. 3).  After consideration, it is RECOMMENDED that the motion be denied in part and granted in part.

The facts are, briefly, as follow. On May 3, 2012, Plaintiff SEPH filed this lawsuit asserting breach of contract claims against nine Defendants in connection with promissory notes and guarantees (Doc. 1).  Defendant Sandy Creek II, LLC executed an amended promissory note dated on or about July 28, 2009, in favor of Vision Bank, and the

remaining Defendants executed guarantees promising to repay the loans made by Vision Bank to Sandy Creek II, LLC (*see* Doc. 1; Doc. 1-1). The notes were secured by real property (Doc. 1, p. 1). SEPH became the successor of these notes subsequent to its merger with Vision Bank (Doc. 1, p. 1). SEPH sued nine Defendants, including Raymond Peed and Paul Peed ("Peeds"), for breach of contract since the sums on the notes are due, have not been paid, and are now in default (*see* Doc. 1). On June 28, 2012, the Peeds filed their Answer and Counterclaim (Doc. 34). The Peeds claim that as part of the transactions described by SEPH in its Complaint, Sandy Creek II, LLC (the borrower) and the Peeds (guarantors) had:

> a commercially reasonable expectation that in the event of a default, [Vision Bank and/or SEPH] would foreclose and seize the Property (the primary and material source of collateral) before pursuing any other remedies ... and would give credit to the borrower and guarantors for any amounts owed based on the fair market value of the property. This expectation and the reasonableness of it is further confirmed by the fact that Vision Bank required an appraisal of the subject property if it was not part of the collateral for those loans.

(Doc. 34, p. 14). Also, the Peeds state that after the execution of the guarantees, SEPH "represented" to the Peeds that "as long as they continued to pay their prorated share of the alleged indebtedness that it would take no

action against them"; thus, the Peeds continued to make payments to SEPH based on its "representations" (Doc. 34, p. 19).

The Peeds assert three counterclaims: declaratory judgment[1], promissory estoppel and equitable estoppel (Doc. 34, pp. 11-23).  First, the Peeds argue that controversy exists in this action in regards to: (1) whether the debt is owed by the Peeds as a result of the acts or omissions or delayed actions by Vision Bank; (2) whether SEPH acted in a commercially reasonable manner; (3) whether the Peeds owe any money in light of the limiting language in the 2006 guaranty versus the 2005 guaranty; (4) whether SEPH has standing to enforce the notes and guarantees; and (5) whether any relief requested by the Plaintiff is barred based on its unlawful actions (Doc. 34, p. 20).  These controversies have caused uncertainty to the rights and/or obligations of the parties; thus, until the Court declares such rights and/or obligations of the parties, the Peeds

---

[1] The Court notes that the Peeds have attached an Amended Counterclaim (Doc. 45-1) wherein the proper law, the Federal Declaratory Judgment Act, is cited instead of the state act.  For the purposes of this report and recommendation, the Court will discuss the merits of the Motion to Dismiss and not evaluate whether the Peeds cited the proper law. However, if this Report and Recommendation is adopted, then the Peeds are **ORDERED** to file a Motion for Leave to file the Amended Counterclaim and attach such for consideration at that time.

3

will continue to suffer irreparable harm (Doc. 34, p. 20). Also, the Peeds request relief under the counterclaims of promissory estoppel and equitable estoppel since SEPH made "express promises and other representations to [the Peeds] which contained promissory elements", i.e., that SEPH would in fact modify and extend the terms of the notes and would not seek action against the Peeds (Doc. 34, p. 22). Because of these representations, the Peeds continued to pay on the notes (*see* Doc. 34).

On July 3, 2012, SEPH filed a Motion to Dismiss the Peeds' Counterclaims and a Brief in support thereof (Docs. 39, 40) wherein SEPH argues that the declaratory judgment counterclaim should be dismissed because it is redundant to SEPH's claim for breach of contract (Doc. 40, p. 2).  Also, SEPH argues that the promissory estoppel and equitable estoppel claims should be dismissed because this case hinges upon express written contracts which preclude any type of breach of contract of quasi-contractual claims (Doc. 40, p. 3).

The Peeds filed a Response (Doc. 45) wherein they argue that the counterclaims seek relief and declaration of rights that exceed the limited facts, claims and relief set forth by SEPH (Doc. 45, p. 4).  Next, the Peeds aver that other alleged guarantors not named in this action "may or

4

Case 1:12-cv-00303-KD-M   Document 52   Filed 10/11/12   Page 5 of 13

may not affect the rights and obligations of the named defendants including, but not limited to, a determination of the right of contribution and among corporate defendants and their members" which is why the declaratory judgment counterclaim is necessary (Doc. 45, pp. 4-5).  The Peeds also point out that SEPH's Complaint did not discuss any activity that SEPH has taken in relation to the real property which was pledged as collateral, whereas the Peeds set forth in their' counterclaims that the property is crucial to this action (Doc. 45, p. 5).  Furthermore, the Peeds argue that the promissory estoppel and equitable estoppel counterclaims are proper since these counterclaims are based on facts that occurred after the execution of the guarantees, and ,at the pleadings stage, alternative theories are permitted (Doc. 45, pp. 9-10).

On August 27, 2012, SEPH filed its Reply (Doc. 46) wherein SEPH reiterates that the counterclaims should be dismissed because they "fail to state a claim upon which relief can be granted" (Doc. 46, p. 1).  Specifically, SEPH argues that no result of the declaratory judgment counterclaim would encompass anything outside its breach of contract claim (Doc. 46, pp. 1-2).  Second, SEPH states that under the Statute of Frauds, Ala. Code § 8-9-1, et seq., the modification of an agreement to lend money, delay

5

or forebear payment must be in writing and any representations made by SEPH to modify the agreement were not binding nor expected to be binding under the law (Doc. 46, p. 5).  Thus, the counterclaims of equitable estoppel and promissory estoppel fail as a matter of law (Doc. 46, p. 5).

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure raises the defense of failure to state a claim upon which relief can be granted.[2]  Fed.R.Civ.P. 12(b)(6).  A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading standards set forth in Rule 8, and if applicable, Rule 9 of the Federal Rules of Civil Procedure.  In order to state a claim for relief, the Federal Rules of Civil Procedure state that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  The Court notes, initially, that "[w]hen considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be

---

[2] The requirements for complaints set out in this standard apply to counterclaims as well. The federal rules for pleading by their own terms apply to claims and allegations, not just complaints. *See* Fed.R.Civ.P. 8 & 9; *United Fixtures Co., Inc. v. Base Mfg.*, 2008 WL 4550212, *4 (M.D. Fla. Oct. 8, 2008); *Fabricant v. Sears Roebuck*, 202 F.R.D. 306, 308 (S.D. Fla. 2001).

6

accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)).  It is noted, however, that a complaint may be dismissed, under Federal Rule of Civil Procedure 12(b)(6), "on the basis of a dispositive issue of law." *Executive 100, Inc. v. Martin County*, 922 F.2d 1536, 1539 (11th Cir. 1991) (citing *Neitzke v. Williams*, 490 U.S. 319 (1989)), cert. denied, 502 U.S. 810 (1991).

First, the Court turns to whether the declaratory judgment counterclaim is due to be dismissed.

> A number of courts have dismissed counterclaims that contain repetitious issues already before the court by way of the complaint or affirmative defenses. *Gratke v. Andersen Windows, Inc.,* 2010 WL 5439763, *2 (D.Minn. 2010). When deciding whether to dismiss a counterclaim on the basis that it is redundant, "courts consider whether the declaratory judgment serves a useful purpose." *Id.* at *3. To determine whether the declaratory judgment serves a useful purpose, courts should consider "whether resolution of plaintiff's claim, along with the affirmative defenses asserted by defendants, would resolve all questions raised by the counterclaim." *Id.*

*Medmarc Casualty Ins. Co. v. Pineiro & Byrd PLLC*, 783 F.Supp.2d 1214, 1216-17 (S.D. Fla. 2011).  However, in cases where the declaratory relief sought is based on contract interpretation,

7

> courts are reluctant to dismiss a counterclaim for declaratory relief as redundant even when it is a near "mirror image" of the complaint, because a "ruling adverse to the plaintiff on plaintiff's claim would merely result in a judgment that plaintiff was not entitled to the relief requested; although it might logically flow from that judgment that defendant's interpretation of that contract was the correct one, defendants would not be entitled to a judgment to that effect unless th[ey] specifically requested one."

*Medmarc Casualty Ins. Co.*, 783 F.Supp.2d at 1216 citing *Procentury Ins. Co. v. Harbor House Club Condo Assoc.*, Inc., 652 F.Supp. 2d 552, 536 (D.N.J. 2009)(quotation omitted).

Here, the Peeds have offered that there is a question as to the interpretation of the contract language- whether the Peeds owe any money in light of the limiting language in the 2006 guaranty versus the 2005 guaranty; thus, there is uncertainty as to the rights and/or obligations of the parties (*see* Doc. 34, p. 20).  Additionally, if there are unnamed parties to this action, then uncertainty as to the rights and/or obligations of the parties named to this action does appear to exist (*see* Doc. 45, pp. 4-5).  Since there appears to be an issue of contract interpretation in this action as well as potential controversy that exceeds the Complaint, SEPH's Motion to Dismiss as to the Peed's declaratory judgment counterclaims should be denied.

8

Next, the Court turns to whether the promissory and equitable estoppel counterclaims are due to be dismissed. Under Alabama law concerning written agreements for the commitment of lending money, the Statute of Frauds sets forth in relevant part, as follows:

> In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:....
>
> (7) Every agreement or commitment to lend money, delay or forebear repayment thereof or to modify the provisions of such an agreement or commitment except for consumer loans with a principal amount financed less than $25,000 ...

Ala. Code § 8-9-2 (1975). Under Alabama law, promissory estoppel is defined as "[a] a promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce some action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Ford v. Jackson Square Ltd.*, 548, So.2d 1007, 1013 (Ala. 1989)(internal quotation omitted).

> Equitable estoppel requires the following elements:
>
> (1) the party against which estoppel is asserted communicate something in a misleading way, with the intent that the communication be acted upon; (2) the party asserting estoppel reasonably

9

>   relied on the communication; and (3) that the
>   party relying on the communication would be
>   harmed materially if the other party were
>   permitted to now take a position inconsistent
>   with its earlier conduct.

*Regions Equipment Finance Corp. v. M/ ACCU I, Official Number 533962*, 2010 WL 5376306, *8 (S.D. Ala. Dec. 27, 2010) citing *Allen v. Bennett*, 823 So.2d 678, 685 (Ala. 2001). The Southern District of Alabama has discussed the issue of whether equitable estoppel and promissory estoppel claims are barred in an action where the Statute of Frauds is in play, as follows:

>   Equitable estoppel and promissory estoppel differ
>   in that the former requires reliance on a
>   misrepresentation, while the latter does not.
>   *Durham v. Harbin,* 530 S[o].2d 208, 213 n. 6
>   (Ala.1988). In *Durham,* with respect to promissory
>   estoppel, the court stated that "[a]lthough
>   allowing a plaintiff's reliance on nonfraudulent
>   representations to abrogate the Statute of Frauds
>   is a widespread phenomenon ... Alabama has
>   rejected this approach to date...." *Id.* at 213.
>   In *DeFriece v. McCourquodale,* 998 So.2d 465, 471
>   (Ala.2008), the court further narrowed the
>   Statute of Frauds exceptions by opining that "a
>   party may not avoid the effect of the Statute of
>   Frauds by framing the claim as one alleging
>   promissory fraud or by invoking the historical
>   fraud-in-the-inception exception to the Statute
>   of Frauds." *See also Bruce v. Cole,* 854 So.2d 47,
>   58 (Ala.2003) (holding "that an oral promise that
>   is void by operation of the Statute of Frauds
>   will not support an action against the promisor
>   for promissory fraud"); *Holman v. Childersburg
>   Banco. Inc.,* 852 So.2d 691, 696–97 (Ala.2002)
>   (holding that in the absence of limited
>   circumstances, a party is not estopped from
>   raising a statute of frauds defense even if the
>   agreement actually existed).

*Regions Equipment Finance Corp.*, 2010 WL 5376306 at *9.

In this action, it is undisputed that an agreement in writing exists to lend money (*see* Docs. 1-1). In the Peeds' Answer and Counterclaim (Doc. 34)[3], the Peeds state that SEPH made "representations" to the Peeds to indicate the contract terms would be modified so that the loan would be extended as long as the Peeds continued to pay SEPH and that no other action would be taken (*see* Doc. 34 pp. 11-23). Nowhere in the Peeds' pleadings has the Court found where SEPH's "representations" were written modifications to the original loan documents (*see* Docs. 34, 45, 45-1). Since any modification to the loan documents is required to be in writing, any reliance on mere unwritten representations would not give rise to a proper claim of equitable estoppel or promissory estoppel. *See* Ala. Code. § 8-9-2; *DeFriece v. McCourquodale,* 998 So.2d at 471; Durham v. Harbin, 530 So.2d at 213 n.6. Therefore, the Peeds equitable estoppel and promissory estoppel counterclaims are due to be dismissed as a matter of law.

In conclusion, for the reasons set out above, the Court finds that Defendants Paul Peed and Raymond Peed's

---

[3] The Court reviewed the proposed Amended Counterclaim (Doc. 45-1) for language or the inclusion of documents reflecting that Vision Bank and/or SEPH modified the previous agreement in writing, but found none.

11

counterclaim for declaratory judgment should not be dismissed at this time, but that the counterclaims of equitable and promissory estoppel are due to be dismissed as a matter of law in light of the Ala. Code § 8-9-2 (1975). Therefore, it is RECOMMENDED that Plaintiff SE Property Holdings, LLC's Motion to Dismiss Paul Peed and Rayond Peed's Counterclaim (Doc. 39) be denied in part and granted in part as set out above.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this 11th day of October, 2012.

s/BERT. W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1. **Objection**.  Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for

12

challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within fourteen days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objection party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. **Transcript (applicable where proceedings tape recorded)**.
Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.