IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SE PROPERTY HOLDINGS, LLC, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 12-00303-KD-M |
| | ) |
| SANDY CREEK II, LLC, *et al.*, | ) |
| Defendants. | ) |

## ORDER

This action is before the Court on the Petition for Attorneys' Fees and Costs and supporting exhibits (Doc. 143) filed by Plaintiff SE Property Holdings, LLC ("SEPH"), which seeks "an award of attorneys' fees and costs against Defendants Nanni Pidikiti, Coast Investment Properties, LLC . . . , George W. Skipper, and Sandy Creek II, LLC . . ." (Id. at 1). Though given the opportunity to do so (see Doc. 142 at 16), no defendant has filed a response to the petition.

Upon consideration, and for the reasons stated herein the Court finds that SEPH's petition is due to be **GRANTED in part** and **DENIED in part** as to Defendants Sandy Creek II, LLC ("SC II") and George W. Skipper, III ("Skipper") and is due to be **DENIED without prejudice** as to Defendants Nanni Pidikiti ("Dr. Pidikiti") and Coast Investment Properties, LLC ("CIP").

### I. Procedural History

On June 21, 2013, the Court granted summary judgment in favor of SEPH on its claim for breach of promissory notes against SC II. (Doc. 114). On August 23, 2013, the Court granted summary judgment in favor of SEPH on its claim for breach of guaranty against Skipper.[1] (Doc. 127). Following a bench trial, the Court, on November 6, 2013, found in favor

---

[1] Though this action was originally stayed as to Skipper upon his filing a Suggestion of Bankruptcy (see Doc. 51), SEPH subsequently obtained a relief from automatic stay from the bankruptcy court to pursue

of SEPH on its claims for breach of guaranties against Dr. Pidikiti and CIP. (Doc. 142). Aware that SEPH sought an award of attorneys' fees and costs in this action, the Court then ordered SEPH to file "whatever materials it deems necessary and appropriate to support its entitlement to and claim for costs and fees." (Id. at 16). SEPH timely filed its Petition for Attorneys' Fees and Costs (Doc. 143) on November 13, 2013. The time for filing responses to the petition has expired with none being filed, and the petition is now ripe for adjudication.

On December 12, 2013, SEPH filed notice that it had executed a settlement agreement with Dr. Pidikiti and CIP and requested that those Defendants be given 120 days to fulfill their obligations under the agreement. (Doc. 148). Pursuant to this notice, the Court dismissed this action with prejudice as to Dr. Pidikiti and CIP, "subject to the right of SEPH to reinstate the action against these Defendants within one-hundred twenty (120) days of the date of this Order should the settlement agreement not be consummated." (Doc. 149). Therefore, the Court will **DENY without prejudice** SEPH's Petition for Attorneys' Fees and Costs (Doc. 143) as to Dr. Pidikiti and CIP, with leave to renew the petition as to these Defendants in the event this action is timely reinstated against them.

## II. Analysis

SEPH requests a total award of $246,987.18 in attorneys' fees and costs, consisting of i) $165,394.50 in attorneys' fees and $1,812.27 in costs incurred in litigating this action and ii) $76,638.50 in attorneys' fees and $3,141.91 in costs incurred in litigating to final judgment another action in this district, Vision Bank v. Raley et al., Case No. 1:11-cv-00247-CB-N (hereinafter identified as "the First Action"), in which SEPH asserted breach-of-guarantee claims

---

this action against Skipper (Doc. 77). As it has yet to formally so, the Court hereby **ORDERS** that the stay previously imposed against Skipper (Doc. 51) is **LIFTED**. The Court also notes that, while it had previously referred all claims against Skipper in this action to his bankruptcy action for appropriate disposition (Doc. 71), that reference has since been withdrawn (Doc. 125).

2

against other guarantors of the loans at issue in this action. In support of this request, SEPH submits 1) the Declaration of Russel Myles, a partner with the Mobile, Alabama law firm McDowell Knight Rhoedder & Sledge, LLC who is one of SEPH's attorneys in this action, to which is attached itemized billing records and invoices for expenses (Doc. 143-2), and 2) the Declaration of Russell C. Buffkin (Doc. 143-3),[2] a partner-shareholder with the Mobile law firm Helmsing Leach Herlong Newman & Rouse, P.C. who has "been asked to express an opinion as to the reasonableness of the fees" requested by SEPH in this action.

A. Applicable Law

SEPH claims that it is entitled to an award of attorneys' fees and expenses from SC II and Skipper pursuant to the terms of various contracts between it and them. This action is before the Court on the basis of diversity pursuant to 28 U.S.C. § 1332. "[A] federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits." Manuel v. Convergys Corp., 430 F.3d 1132, 1139 (11th Cir. 2005) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). It follows, then, that "[f]ederal courts apply state law when ruling on the interpretation of contractual attorney fee provisions." In re Sure-Snap Corp., 983 F.2d 1015, 1017 (11th Cir. 1993). Accord Azar v. Nat'l City Bank, 382 F. App'x 880, 886 (11th Cir. 2010) (per curiam) ("We apply state law in determining the meaning of a contractual attorney fee provision."). "Alabama applies the traditional doctrine[] of *lex loci contractus* to contract claims . . . The doctrine states that a contract is governed by the laws of the state where it is made except where the parties have legally contracted with reference to the laws of another jurisdiction." Colonial Life & Accident Ins. Co. v. Hartford Fire Ins. Co., 358 F.3d 1306, 1308 (11th Cir. 2004) (citing Cherry, Bekaert & Holland v. Brown, 582 So. 2d

---

[2] Myles and Buffkin's unsworn declarations are each made pursuant to and in compliance with 28 U.S.C. § 1746.

3

502, 506 (Ala. 1991)) (internal quotations omitted). Accord Lifestar Response of Ala., Inc. v. Admiral Ins. Co., 17 So. 3d 200, 213 (Ala. 2009). As found in the Court's previous Orders (Docs. 114, 127), all relevant contracts expressly provide that they are to be governed by the laws of Alabama, and no party has argued that the law of any other jurisdiction should apply. Accordingly, the Court will apply Alabama law to SEPH's claim for attorneys' fees and costs.

### B. Entitlement

Alabama recognizes "the American rule, which does not require a losing party to pay the attorney fees of the winning party, as a general rule." Classroomdirect.com, LLC v. Draphix, LLC, 992 So. 2d 692, 710 (Ala. 2008). The Alabama Supreme Court, however, also recognizes that "there are exceptions to that rule." (Id.). One such exception is when attorney fees " ' "are provided for . . . by contract . . . " ' " Id. (quoting City of Bessemer v. McClain, 957 So. 2d 1061, 1078 (Ala. 2006) (quoting Battle v. City of Birmingham, 656 So. 2d 344, 347 (Ala. 1995))) (ellipses added). Under Alabama law, it is well settled that provisions relating to the payment of attorneys' fees are enforceable. See, e.g., Subway Rests., Inc. v. Madison Square Assoc., Ltd., 613 So. 2d 1255, 1257 (Ala. 1993) (holding that "[i]n Alabama, in state law causes of action, attorney fees are recoverable as part of the costs of the action...when provided in a contract"); Knight v. Hired Hand Green, Inc., 775 So. 2d 218, 222 (Ala. Civ. App. 1999) (finding the plaintiff "was necessarily entitled to...attorney fee for collection…pursuant to the clear terms of the contract"). See also, e.g., Smith v. Combustion Res. Eng'g, Inc., 431 So. 2d 1249, 1252 (Ala. 1983); Lewis v. Haleyville Mobile Home Supply, Inc., 447 So. 2d 691, 692-93 (Ala. 1984); Chilton Warehouse & Mfg. Co. v. Lewis, 57 So. 100, 101 (Ala. App. 1911).

With respect to its entitlement to attorneys' fees and costs from SC II, SEPH cites to ¶ 6 of both the original promissory notes (SEPH's Trial Exs. 19, 44. See also Docs. 83-13 & 83-35)

4

and the amended promissory notes (SEPH's Trial Exs. 48F, 49E. See also Doc. 64-1 at 5-16) for the two loans at issue.[3] Paragraph 6 in each of these documents is entitled "Attorney Fees" and states (bracketed text found only in the amended promissory notes):

> Borrower [SC II] and each endorser or guarantor of this Note agree to pay reasonable actual attorneys' fees and costs incurred by the Holder hereof[, Vision Bank,[4]] in collecting or attempting to collect this Note, whether by suit or otherwise[, and in connection with the loan extension/modification evidenced by this note].

SC II is the only signatory to the promissory notes.

With respect to its entitlement to attorneys' fees and costs from Skipper, SEPH cites to the following provisions from the two guaranties he executed:

> 1. **Guaranty.** For valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the undersigned, **GEORGE W. SKIPPER, III** (hereinafter called "Guarantor"), unconditionally guarantees and promises to pay to **VISION BANK**, a corporation (hereinafter called "Bank"), or order, on demand, in lawful money of the United States, any and all Indebtedness, as hereinafter defined, of **SANDY CREEK II, LLC**, an Alabama limited liability company (hereinafter called "Borrower"), to Bank. The word "Indebtedness" is used herein in its most comprehensive sense and pertains to a loan in the principal amount of Five Million Dollars ($5,000,000.00) being made by Bank to Borrower on or about the date hereof (the "Loan"). "Indebtedness" includes any and all advances, debts, obligations and liabilities of Borrower to Bank heretofore, now, or hereafter existing, made, incurred, or created, whether voluntary or involuntary, arising under, pursuant to or in connection with the Note (as hereinafter defined) and/or any and all other Loan Documents (as hereinafter defined), whether due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined, not limited to but including . . . costs of collection, attorney's fees and all other lawful charges, and whether Borrower may be liable individually or jointly with others . . . "Note" refers to the $5,000,000.00 principal amount Promissory Note dated on or about September 30, 2005, from Borrower to the Bank, as the same may from time to time be amended, restated, extended, consolidated, replaced and/or renewed, together

---

[3] Familiarity with the factual background of this action is assumed in this Order and will be restated only as necessary.

[4] As has previously been established, SEPH is successor in merger to Vision Bank.

5

with all such amendments, restatements, extensions, consolidations, replacements and/or renewals. "Loan Documents" (or singularly a "Loan Document") refers to the Note, the Mortgage and Security Agreement ("Mortgage") dated on or about the date hereof between Borrower and Bank and relating to the Loan, and all other documents and instruments related to the Loan or any of the indebtedness and obligations at any time arising thereunder or the security therefor.

. . .

10. **Expenses of Collection: Waiver of Right of Exemption.** Guarantor agrees to pay reasonable attorney's fees and all other costs and expenses which may be incurred by Bank in the enforcement of this Guaranty . . .

(Skipper Continuing Guaranty, Doc. 79-2 at 6-10).

1. **GUARANTY.** For valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the-undersigned **GEORGE W. SKIPPER, III** (hereinafter called "Guarantor"), jointly and severally unconditionally guarantees and promises to pay to **VISION BANK** (hereinafter called "Bank"), or order, on demand, in lawful money of the United States, any and all Indebtedness, as hereinafter defined, of **SANDY CREEK II, LLC**, an Alabama limited liability company (hereinafter called "Borrower"), to Bank. The word "Indebtedness" is used herein in its most comprehensive sense and includes a loan to be made by Bank to Borrower within 10 days after the date hereof in the amount of up to Two Million Dollars ($2,000,000.00) (the "Loan") and any and all advances, debts, obligations and liabilities of Borrower to Bank heretofore, now, or hereafter existing, made, incurred, or created, whether voluntary or involuntary, and whether or not arising under, pursuant to or in connection with the Loan Agreement (as hereinafter defined) the Note (as hereinafter defined) and/or any and all other Loan Documents (as hereinafter defined), whether due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined, not limited to but including principal, interest, costs of collection, attorney's fees and all other lawful charges, and whether Borrower may be liable individually or jointly with others . . . "Loan Agreement" refers to the Loan Agreement for Construction Financing to be dated on or about the date the Loan is first funded between Borrower and Bank, and "Note" refers to the Two Million Dollar ($2,000,000.00) maximum principal amount Promissory Note to be dated on or about the date of the Loan Agreement from the Borrower to the Bank, as the same may from time to time be amended, restated, extended, consolidated, replaced and/or renewed, together with all such amendments, restatements, extensions, consolidations, replacements and/or renewals. "Loan Documents" (or singularly a "Loan Document") refers to the Loan Agreement, the Note and all other documents and instruments related to the Note and/or any of the indebtedness and obligations at any time arising thereunder or the security therefor, and including, without limitation to the generality of the foregoing, a Mortgage and Security

> Agreement from Borrower to Bank dated on or about September 30, 2005, as modified by instruments between Borrower and Bank to be dated the date of the Note, as the said documents and instruments may from time to time be amended, restated, extended and/or consolidated.
>
> . . .
>
> 10. **Expenses of Collection: Waiver of Right of Exemption.** Guarantor agrees to pay reasonable actual attorney's fees and all other costs and expenses which may be incurred by Bank in the enforcement of this Guaranty . . .
>
> . . .
>
> 14. **LIMITATIONS OF LIABILITY.** . . . Guarantor shall be liable for . . . (iii) 100% of all costs and expenses (including reasonable actual attorney's fees) of collection related or attributable, directly or indirectly, to the enforcement of Guarantor's obligations under this Guaranty, and (iv) 100% of all other costs and expenses (including reasonable actual attorney's fees) of collection relating to all principal, interest and other charges under the Note and/or relating to any other Indebtedness and paid or incurred by the Bank prior to the payment-in-full by Guarantor of his or her liability under clauses (i), (ii) and (iii) of this sentence.

(Skipper Limited Continuing Guaranty, id. at 11-15).

Moreover, both SC II and Skipper signed a Supplement to Loan Documents (SEPH's Trial Ex. 76. See also Doc. 79-2 at 1-4) that, *inter alia*, "authorize[d SEPH] to pursue collection efforts against the Excluded Guarantors for the full balance of the Loans." The term "Excluded Guarantors" includes "any guarantor of any of the Loans who is not an Included Guarantor, including Joseph S. Raley, Joe E. Raley, and Joseph B. Raley . . ." The Supplement further provides that, "in consideration of [the] execution of this Agreement, [Vision ]Bank agrees that as long as Borrower [SC II ] and Included Guarantors comply with their respective covenants and obligations under this Agreement, the Amended Notes, the Mortgage and other Security Documents, the Loan Agreement for Construction Financing between Borrower and Bank dated on or about October 13, 2006 . . ., and all other documents relating to the Loans, Bank will not . . . file any lawsuit against Borrower or any Included Guarantor to collect any sums owed under

the Amended Notes . . ." Finally, the Supplement further provides, in paragraph 8: "Borrower [SC II] shall pay all attorneys' fees, filing fees and other costs incurred by Bank in connection with this Agreement and the modification and extension of the Loans."

Based on the above-quoted contractual provisions, the Court finds that SC II and Skipper liable to SEPH for all reasonable attorneys' fees, costs, and expenses incurred in this action and the First Action.

### C. Amount & Reasonableness of Attorneys' Fees

As noted previously, while given the opportunity to do so, no defendant has challenged SEPH's right to recover its attorneys' fees and expenses. However, under the terms of the various loan documents quoted above, SEPH may recover only those fees and expenses that are "reasonable."[5] Accordingly, the Court must assess the reasonableness of SEPH's request in order to fashion an award.

"Just as a federal court must apply state law to determine whether a party is entitled to fees, it must also apply state law to resolve disputes about the reasonableness of fees." Kearney v. Auto-Owners Ins. Co., 713 F. Supp. 2d 1369, 1373 (M.D. Fla. 2010) (citing, e.g., Trans Coastal Roofing Co., Inc. v. David Boland, Inc., 309 F.3d 758, 760 (11th Cir. 2002) ("Since Boland's claim for attorneys' fees sounds in state law and reaches us by way of federal diversity jurisdiction, we apply the substantive law of Florida, the forum state." (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938))). In Alabama, "[t]he reasonableness of an attorney fee under a contract providing for the recovery of reasonable attorney fees is largely within the discretion of the trial court. This discretion is an advised, just, judicial and revisable discretion in the light of

---

[5] Moreover, "Alabama law reads into every agreement allowing for the recovery of attorney's fees a reasonableness limitation." E.g., Willow Lake Residential Ass'n, Inc. v. Juliano, 80 So. 3d 226, 241 (Ala. Civ. App. 2010) (citing cases).

8

the whole record." Lanier v. Moore-Handley, Inc., 575 So. 2d 83, 85 (Ala. 1991) (citations and quotations omitted). The Alabama Supreme Court

> "has set forth 12 criteria a court might consider when determining the reasonableness of an attorney fee:
>
> " '(1) [T]he nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances.'
>
> "Van Schaack v. AmSouth Bank, N.A., 530 So. 2d 740, 749 (Ala. 1988). These criteria are for purposes of evaluating whether an attorney fee is reasonable; they are not an exhaustive list of specific criteria that must all be met. Beal Bank v. Schilleci, 896 So.2d 395, 403 (Ala. 2004), citing Graddick v. First Farmers & Merchants Nat'l Bank of Troy, 453 So. 2d 1305, 1311 (Ala. 1984)."

Kiker v. Probate Court of Mobile Cnty., 67 So. 3d 865, 867-68 (Ala. 2010) (quoting Pharmacia Corp. v. McGowan, 915 So.2d 549, 552–53 (Ala. 2004) (emphasis added)). Accord, e.g., Ruttenberg v. Friedman, 97 So. 3d 114, 137 (Ala. 2012). The trial court may consider both expert opinion and its own judgment in determining the reasonableness of requested fees. See, e.g., Beal Bank, SSB v. Schilleci, 896 So. 2d 395, 404 (Ala. 2004) (" 'The trial court, in connection with a consideration of the opinion evidence proffered by qualified experts, may call to his aid his own estimate of the value of such legal services after considering the aforementioned elements and, generally speaking, the allowance rests within the sound judicial discretion of the trial court.' " (quoting Ingalls v. Hare, 96 So. 2d 266, 274 (Ala. 1957)); Rice v. Grove Hill Homeowners' Ass'n, Inc., 113 So. 3d 659, 663 (Ala. Civ. App. 2012) ("The trial court may rely on its own knowledge and experience in determining the value of the legal services

performed and in setting the fee without entertaining evidence of the reasonableness of the fee."). " 'When an applicant for attorney fees "has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee to which counsel is entitled." ' " Beal Bank, 896 So. 2d at 408 (quoting Ex parte Edwards, 601 So. 2d 82, 85 (Ala. 1992) (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984))). "[I]f after considering the appropriate factors, a trial court concludes that the billed attorney's fees are unreasonable in amount, the appropriate action is not to deny the claim altogether but to enter a judgment for a reasonable amount of attorney's fees." Willow Lake Residential Ass'n, Inc. v. Juliano, 80 So. 3d 226, 242-43 (Ala. Civ. App. 2010) (citing Beal Bank, 896 So. 2d 395).

Federal courts in this Circuit generally apply the "lodestar" method -- multiplying the hours reasonably expended by a reasonable hourly rate -- to make an assessment of the reasonableness of attorneys' fees awarded under federal law. Norman v. Hous. Auth., 836 F.2d 1292, 1299 (11th Cir. 1988). The Eleventh Circuit has indicated that it is not error to apply the "lodestar" analysis in determining the reasonableness of claims for attorneys' fees and costs based on state law, at the very least to supplement a court's analysis of "reasonableness" under state law.[6] Under the "lodestar" method, "[i]n determining what is a 'reasonable' hourly rate and what number of compensable hours is 'reasonable,' the court is to consider the 12 factors enumerated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974)." Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008) (per curiam). Those 12 factors are:

---

[6] See Gowen Oil Co., Inc. v. Abraham, 511 F. App'x 930, 934 n.5 (11th Cir. 2013) (In reviewing attorneys' fees and costs awarded pursuant to Georgia statute, stating: "The district court used federal law to evaluate the reasonableness of the requested amount. Gowen did not object to that, and both parties base their arguments about the reasonableness of the fees on federal law. In any event, as the district court noted, the outcome would be the same under Georgia law. Therefore, we assume, as everyone else has, that federal standards of reasonableness apply. Cf. Columbus Mills, Inc. v. Freeland, 918 F.2d 1575, 1578, 1580 (11th Cir. 1990) (following state law in determining whether attorney's fees were available but applying, without comment, federal standards to determine reasonableness).").

> "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."

Id. at n.2 (citing Johnson, 488 F.2d at 717-19) (quotation marks omitted).

The Supreme Court has cautioned that "the determination of fees should not result in a second major litigation. The fee applicant (whether a plaintiff or a defendant) must, of course, submit appropriate documentation to meet the burden of establishing entitlement to an award. But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." Fox v. Vice, 131 S. Ct. 2205, 2216 (2011) (citations and quotations omitted).

### *1. Billing Rates*

According to Myles's declaration, SEPH seeks recovery of the time billed for the following individuals at McDowell Knight at the following rates:

- Attorney Russell Myles - $250/hour

-partner at with over 20 years experience in complex commercial and business litigation

- Attorney J. Stephen Harvey - $220/hour

-partner with over 20 years experience practicing law, including in banking-related work such as negotiating and drafting loan agreements, guaranties, notes, and related

documents

- Attorney Archibald T. Reeves, IV - $220/hour

-managing partner with over 20 years experience practicing law, extensive litigation experience, including in banking-related matters

- Attorney Frederick G. Helmsing, Jr. - $220/hour

-partner with over 13 years experience practicing law

- Attorney Richard M. Gaal - $220/hour

-partner with over 15 years experience practicing law, with experience in complex business and commercial litigation, bankruptcy, and creditor/debtor rights

- Attorney S. Fraser Reid, III - $185/hour

-senior associate with over 9 years experience practicing law, served for 2 years as law clerk for judge of Court of Appeals for Fourth Circuit

- Attorney Mary Emily Monroe - $175/hour

-associate with over 6 years experience practicing law

- Attorney M. Tae Phillips - $150/hour

-former associate with 2 years experience practicing law at time of service

- Law Student K. Morgan Sanders - $110/hour

-summer associate in 2013, will join firm as full-time associate in 2014

- Paralegals Anna Bush, Pauline Holder, Lindsey Killough, Rebecca Ann Neese, and Melissa Anderson - $110/hour

-10 years experience for Bush, 25 years for Holder, and 5 years for Killough

-no amount of experience provided for Neese and Anderson

In Myles's declaration, he states: "Based on my experience in this market, rates for work

of this nature, performed by firms similar to [McDowell Knight], range from $200 to $300 per hour." (Doc. 143-2 at 3, ¶ 6). He also cites to other cases from this district wherein the requested rates for a number of the above-named individuals were found to be reasonable. In Buffkin's declaration, he states that he has "fourteen years legal experience in a broad-ranged civil litigation practice in this district" and is "familiar with the law firm [McDowell Knight], with their attorneys, and with the fees customarily charged by attorneys of like or similar experience in the Mobile and Baldwin County communities," and "it is [his] opinion that the hourly rates requested are reasonable and customary in this district for attorneys of similar experience, expertise, skill, and reputation . . ." (Doc. 143-3 at 1-2, ¶¶ 2, 4, 6).

The Court, which is familiar with the prevailing rates in the local market, may also act as its own expert and rely on its knowledge and experience to determine the reasonableness and propriety of the requested fees. See Beal Bank, 896 So. 2d at 404; Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994). In the past the Court has found rates similar to those requested for the above-named partner attorneys to be reasonable (and in fact has approved the same rate for attorney Helmsing in a previous Vision Bank case). See Vision Bank v. Glynn, Civ. A. No. 10-00393-KD-N, 2012 WL 685281, at *5 (S.D. Ala. Mar. 2, 2012) (DuBose, J.) ("[A]s to Fred Helmsing, the Court is aware of his experience (as having practiced for more than 12 years) and in other cases has previously determined that a reasonable rate for a partner with 12 years of experience is $225/hour and with 15 years of experience is $250/hour. See, e.g., Vision Bank v. FP Mgmt., LLC, 2012 WL 222951, *3 (S.D. Ala. Jan. 25, 2012); Vision Bank v. Anderson, 2011 WL 2142786, *3 (S.D. Ala. May 31, 2011); Mitchell Co., Inc. v. Campus, 2009 WL 2567889, *1 and *17–18 (S.D. Ala. Aug. 18, 2009); Wells Fargo Bank, N.A. v. Williamson, 2011 WL 382799, *4 (S.D. Ala. Feb. 3, 2011) . . . Accordingly, based on the Court's experience,

knowledge and observations, as well a review of prior awards, the Court finds that the **$220/hour** rate for Mr. Helmsing (FGH) is reasonable."); Weller v. Finger, Civ. A. No. 08-0240-CG-C, 2010 WL 2465522 (S.D. Ala. June 15, 2010) (Granade, J.) (finding reasonable a $250/hour billing rate for attorney Miles in a business defamation dispute); Goldsby v. Renosol Seating, LLC, No. 2:08-0148-KD-N, 2013 WL 6535253, at *9 (S.D. Ala. Dec. 13, 2013) (DuBose, J.) ("[T]his Court's customary hourly rates for attorneys. . . ranges from $250.00 to $300.00 for more experienced and qualified attorneys[ and]$150.00 to $225.00 for less experienced attorneys and associates with few years of practice. . .") (Fair Labor Standards Act case).

Accordingly, based on the opinions of Myles and Buffkin, the information provided as to the experience of the various billing attorneys, the Court's own judgment, the declarations of Myles and Buffkin, its own judgment, and the factors enunciated in Johnson and Van Schaack, in awarding attorneys' fees in this action, the Court finds as reasonable and thus will allow a $250/hour billing rate for attorney Myles (~20 years experience), a $220/hour billing rate for attorneys Harvey (~20 years experience), Reeves (~20 years experience), Helmsing (~13 years experience), and Gaal (15 years experience), a $185/hour billing rate for attorney Reid (~9 years experience), a $175/hour billing rate for attorney Monroe (~6 years experience), and a $150/hour rate for attorney Phillips (~2 years experience).

The Court finds unreasonable the requested hourly rate of $110/hour for the paralegals. Absent a showing that a paralegal possesses some extraordinary qualification or expertise, this Court has routinely found a rate of $75/hour to be reasonable for work by paralegals. See SE Prop. Holdings, LLC v. 145, LLC, Civ. A. No. 10-00521-KD-B, 2012 WL 6681784, at *4 (S.D. Ala. Dec. 21, 2012) (DuBose, J.) (citing cases); Oden v. Vilsack, No. 1000212, 2013 WL

4046456, at *7 (S.D. Ala. Aug. 9, 2013) (DuBose, J.); Johnson v. TMI Mgmt. Sys., Inc., Civ. A. No. 11-0221-WS-M, 2012 WL 4435304, at *4 (S.D. Ala. Sept. 26, 2012) (Steele, C.J.) (citing cases); Brown v. Boeing Co., Civ. A. No. 12-0414-CG-C, 2012 WL 6045924, at *3 (S.D. Ala. Dec. 4, 2012) (Granade, J.) (In awarding attorneys' fees as condition of dismissal under Federal Rule of Civil Procedure 41(a)(2), finding: "In this district, paralegal work is consistently charged at a rate of $75/hour." (citing cases)). Apart from stating their years of experience, SEPH has not demonstrated that any of the paralegals possess other qualifications that merit rates almost 50% more than what the Court has approved in the past. Thus, the Court will allow a billing rate of $75/hour for the various paralegals.[7] The Court will also allow a billing rate of $75/hour for Sanders, which is the Court's usual rate for summer associates/firm law clerks. See Oden, 2013 WL 4046456, at *25; SE Prop. Holdings, LLC v. 145, LLC, Civ. A. No. 10-00521-KD-B, 2012 WL 6681784, at *4 (S.D. Ala. Dec. 21, 2012) (DuBose, J.).

### 2. *Hours*

SEPH seeks recovery for the following hours billed by the following individuals:

| **Billing Individual** | **First Action** | **This Action** | **Total** |
|---|---|---|---|
| Myles | 6.3 | 151.4 | 157.7 |
| Harvey | 43.5 | 100 | 143.5 |
| Reeves | 21.1 | 0 | 21.1 |

---

[7] Alabama appellate courts have not explicitly stated whether and to what extent paralegal fees are recoverable as part of an award of attorneys' fees and/or costs, and state courts are divided on the issue. See Robert L. Rossi, 1 Attorneys' Fees § 6:16 (3d ed.) ("The rule allowing recovery for paralegal services at market rates [under 42 U.S.C. § 1988 ]has been extended to other federal fee-shifting statutes, including the Equal Access to Justice Act. It has also been applied by a number of state courts in various fee-shifting situations. However, a few courts have held to the contrary." (footnotes omitted) (citing cases)). However, this Court has routinely included paralegal fees as a component of attorneys' fees and/or costs awarded pursuant to contractual provisions subject to Alabama law, and no defendant has objected to their inclusion in this action.

| | | | |
|---|---|---|---|
| Helmsing | 206.8 | 154 | 360.8 |
| Gaal | 0 | 1.6 | 1.6 |
| Reid | 0 | 241.3 | 241.3 |
| Monroe | 0 | 51.4 | 51.4 |
| Phillips | 22.6 | 0 | 22.6 |
| Sanders | 0 | 11.9 | 11.9 |
| Bush | 5.4 | 115.6 | 121 |
| Holder | 0 | 3.7 | 3.7 |
| Killough | 59 | 16.8 | 75.8 |
| Neese | 15.9 | 0 | 15.9 |
| Anderson | 0 | 12.7 | 12.7 |

In determining whether the number of hours expended is reasonable, the Court should not include any hours that are "excessive, redundant, or otherwise unnecessary." Norman, 836 F.2d at 1301. When awarding an attorney's fee, the "[c]ourts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." ACLU v. Barnes, 168 F.3d 423, 428 (11th Cir. 1999). The Court will not permit a party to recover fees for hours that are excessive, redundant, or unnecessary, *i.e.*, hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." Norman, 836 F.2d at 1301 (emphasis omitted). Upon consideration of McDowell Knight's billing records, the opinions of Myles and Buffkin, its own judgment, and the factors enunciated in Johnson and Van Schaack, the Court finds that all hours for which SEPH seeks compensation are reasonable. Accordingly, the Court will award SEPH attorneys' fees as follows:

| Billing Individual | # Hours | | Billing Rate | | Total |
|---|---|---|---|---|---|
| Myles | 157.7 | x | $250 | = | $39,425.00 |
| Harvey | 143.5 | x | $220 | = | $31,570.00 |
| Reeves | 21.1 | x | $220 | = | $4,642.00 |
| Helmsing | 360.8 | x | $220 | = | $79,376.00 |
| Gaal | 1.6 | x | $220 | = | $352.00 |
| Reid | 241.3 | x | $185 | = | $44,640.50 |
| Monroe | 51.4 | x | $175 | = | $8,995.00 |
| Phillips | 22.6 | x | $150 | = | $3,390.00 |
| Sanders | 11.9 | x | $75 | = | $892.50 |
| Bush | 121 | x | $75 | = | $9,075.00 |
| Holder | 3.7 | x | $75 | = | $277.50 |
| Killough | 75.8 | x | $75 | = | $5,685.00 |
| Neese | 15.9 | x | $75 | = | $1,192.50 |
| Anderson | 12.7 | x | $75 | = | $952.50 |
| | | | Total | = | **$230,465.50** |

### D. Amount & Reasonableness of Costs & Expenses

SEPH seeks recovery of $1,812.27 in costs and expenses incurred in litigating this action and $3,141.91 in costs and expenses incurred in litigating the First Action. Upon consideration of the billing records and invoices submitted by SEPH, along with the opinions of Myles and Buffkin, its own judgment, the factors enunciated in <u>Johnson</u> and <u>Van Schaack</u>, the Court finds that these costs and expenses are both reasonable and adequately supported and will therefore award SEPH **$4,954.18** in costs and expenses, in addition to the aforementioned attorneys' fees.

### III. Conclusion

In accordance with the foregoing analysis, it is **ORDERED** as follows:

1. SEPH's Petition for Attorneys' Fees and Costs (Doc. 143) is **DENIED without prejudice** as to Defendants Pidikiti and CIP;

2. SEPH's Petition for Attorneys' Fees and Costs (Doc. 143) is **GRANTED in part** and **DENIED in part** as to Defendants SC II and Skipper, such that SEPH is awarded **$230,465.50** in attorneys' fees and **$4,954.18** in costs and expenses from these Defendants; and

3. in order to assist the Court in preparing a final judgment against SC II and Skipper, SEPH shall file, on or before **Tuesday, January 14, 2014**, a document (accompanied by a supporting affidavit or other similar evidence) setting forth the amount of principal and interest owed by Defendants SC II and Skipper, calculated through January 14, 2014.[8] These Defendants shall file any objection to said document on or before **Tuesday, January 21, 2014**. If no such objection is filed, the Court will treat the amounts claimed by SEPH as unopposed and will enter final judgment accordingly.

**DONE** and **ORDERED** this the **7th** day of **January 2014**.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

[8] SEPH should also provide the Court with the *per diem* interest applicable to each Defendant with respect to each promissory note.
In addition, SEPH shall state in the pleading any objection to dismissal of its claim for accounting and inspection in Count III of its Complaint (Doc. 1). If SEPH does not so object, is **ORDERED** that said claim is **DISMISSED with prejudice** without further action by the Court.